UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| CHRISTINA NOEL HIZER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:20-CV-07-HAB |
| | ) |
| ANDREW SAUL, | ) |
| Commissioner of the Social | ) |
| Security Administration[1], | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter comes before the Court on Plaintiff Christina Hizer's ("Hizer") appeal of the Social Security Administration's Decision dated November 7, 2019 (the "Decision"). Hizer filed her Complaint against Commissioner of Social Security (ECF No. 1) on February 6, 2020. Hizer filed her Opening Brief (ECF No. 10) on August 11, 2020. Defendant Andrew Saul, Commissioner of the Social Security Administration (the "Commissioner"), filed his Memorandum in Support of Commissioner's Decision (ECF No. 11) on September 22, 2020. Hizer filed her reply (ECF No. 12) on October 6, 2020. This matter is now ripe for determination.

**ANALYSIS**

**1.**      ***Standard of Review***

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d

---

[1] Andrew Saul is now the commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). See also Section 205(g) of the Social Security Act, 42 USC § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla of proof." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). It means "evidence a reasonable person would accept as adequate to support the decision." *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007); *see also Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation and quotations omitted).

In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple*, 268 F.3d at 516. However, review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted). While the ALJ need not discuss every piece of evidence in the record, she "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz*, 55 F.3d at 308, but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure" the court that he "considered the important evidence" and to enable the court "to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

**2. *The ALJ's Decision***

A person suffering from a disability that renders her unable to work may apply to the Social Security Administration for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A).

If a claimant's application is denied initially and on reconsideration, she may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1). An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, 3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether she has the residual functional capacity to perform her past relevant work, and (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 404.1520(a); *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

First, the ALJ found that Hizer last met the insured status requirements of the Social Security Act on December 31, 2014. At step one, the ALJ found that Hizer did not engage in substantial gainful activity during the period from her amended alleged onset date of June 13, 2012 through her date last insured of December 31, 2014. At step two, the ALJ determined that Hizer had the following severe impairments: degenerative joint disease of both knees, obesity,

3

anxiety, depression, and post-traumatic stress disorder. The ALJ further found that Hizer had the non-severe impairments of migraines and a sleep disorder.

At step three, the ALJ found that Hizer did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526)." (R. 644). At step four, the ALJ found that Hizer had the residual functional capacity ("RFC") to:

> [p]erform light work as defined in 20 CFR 404.1567(b) with exceptions. Specifically, the claimant is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8-hour [workday] and sit 6 hours in an 8-hour workday. She is never to climb ladders, ropes or scaffolds and never work at unprotected heights. However, the claimant is able to frequently climb ramps and stairs, balance and stoop, as well as occasionally kneel, crouch and crawl. Mentally, the claimant is limited to simple work-related decisions and simple and routine tasks with no assembly line work or strictly enforced daily production quotas. She is never to interact with the public, but can occasionally interact with coworkers and supervisors.

(R. 646).

At step five, the ALJ determined that Hizer was unable to perform her past relevant work. (R. 658). However, the ALJ found that there were jobs that existed in significant numbers in the national economy that she could have performed. (R. 659). Therefore, the ALJ found that Hizer was not disabled. (R. 659-60.)

**3.** *Medical Opinion Evidence*

Hizer takes issue with the weight the ALJ assigned to the medical opinions of her treating psychiatrists, Drs. S.G. Kalapatapu and U.R. Kalapatapu, the state agency psychiatrists, and her treating psychiatric nurse practitioner, Anna Philipose.

The ALJ gave great weight to the opinion of Dr. S.G. Kalapatapu, with a few exceptions. The ALJ did not provide great weight to Dr. S.G. Kalapatapu's opinion that Hizer is markedly

4

limited in her ability to accept instructions and respond appropriately to criticism from supervisors, markedly limited in her ability to respond appropriately to changes in the work setting and to travel in unfamiliar places or use transportation. The ALJ also did not provide great weight to the opinion that Hizer would miss three days of work per month. (R. 654). The ALJ noted that there is no evidence that Hizer has had "any problems dealing with supervisors or authority in the past." *Id.* The ALJ further noted that Hizer was cooperative during her examinations, abided by her treating physician's recommendations, was able to go to her appointments independently, and was able to take college classes. *Id.* Further, Hizer admitted that she "took care of everything," and she was looking for work and had a job interview, which the ALJ stated was evidence that she is at most moderately limited in the area of responding appropriately to changes in the work setting. *Id.* The ALJ also noted that despite the stress surrounding the situation, Hizer was able to travel to her mother-in-law's home after she died. *Id.* Finally, the ALJ found that Hizer's ability to "look for a job, go to school, have mostly normal and consistent mental examinations, except for a few and her moderate GAF scores is evidence that she is capable of working a full-time job and would not miss three days of work per month." (R 655).

Hizer asserts that the ALJ erred by placing undue weight on her daily activities in giving portions of Dr. S.G. Kalapatapu's opinion less weight. However, the ALJ did not impermissibly find that Hizer's ability to perform certain daily activities equated to her ability to work full-time. *See Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) (A claimant's "ability to perform daily activities, especially if they can be done only with significant limitations, does not necessarily translate into an ability to work full-time."). The ALJ properly explained how Plaintiff's daily activities contradicted some of the opinions in Dr. S.G. Kalapatapu's opinion. The ALJ did not

5

rely on those daily activities to find that Hizer could perform full-time work. Instead, the ALJ simply noted that some of Hizer's daily activities were not consistent with Dr. S.G. Kalapatapu's opinions.

Hizer also asserts that the ALJ erred in evaluating Dr. U.R. Kalapatapu's opinion.[2] The ALJ provided Dr. U.R. Kalapatapu's opinion little weight, finding it "completely inconsistent with [Dr. S.G. Kalapatapu's] prior opinion and the claimant continued to have the same GAF score, which was consistent with moderate limitations in the areas of social, occupational, or educational functioning." (R. 655). The ALJ then provided a half page analysis of Dr. U.R. Kalapatapu's opinion and how it was inconsistent with other medical evidence in the record. *Id.* The ALJ found that Dr. U.R. Kalapatapu failed to provide a more aggressive treatment protocol, and that if she was as markedly limited as he opined, she would have required more aggressive treatment. *Id.* The ALJ also noted that Hizer did not require hospitalizations for her mental impairments. *Id.* The ALJ also found that Hizer's GAF scores were in the mid-50's, indicative of moderate limitations, outside of one episode of decompensation in December 2012/January 2013. *Id.*

Dr. U.R. Kalapatapu provided a second opinion in June 2016, which the ALJ provided little weight. The ALJ noted that the opinion was given over a year after the date last insured, and therefore was not indicative of her limitations during the relevant time period. (R. 656). The ALJ also again noted that Hizer's GAF scores did not indicate more than moderate limitations. *Id.*

Hizer asserts that the ALJ impermissibly relied on GAF scores to discount Dr. U.R. Kalapatapu's opinion. The ALJ did note the GAF scores present in the records, as well as pointed

---

[2] The ALJ attributes this opinion to Dr. S.G. Kalapatapu; however, the questionnaire was completed by Dr. U.R. Kalapatapu. (R. 468, 472, 633-37, 655-56).

out that certain medical opinions were inconsistent with those GAF scores. However, the ALJ ultimately determined that GAF scores have limited value in determining disability. (R. 651). This is consistent with the Social Security Administration regulations. *See* 65 Fed. Reg. 507460-01. The ALJ did not err in considering the GAF scores, as he did not impermissibly rely solely on the GAF scores. Instead, the ALJ considered the GAF scores in combination with the other evidence in the medical record. Moreover, the ALJ did not consider any single GAF score, but rather noted the consistency of Hizer's GAF scores over time and compared them with the medical opinion.

Hizer also argues that the ALJ improperly relied on the state agency opinions while discounting the opinions of her treating psychiatrists. She asserts that the ALJ erred in relying on the state agency physicians after the prior District Court decision found that reliance on the opinions was in error because they did not have all the relevant evidence. (R. 771). In the original 2015 decision, the ALJ afforded the state agency psychological experts' opinions significant weight, finding that the opinions were supported by the record. (R. 34). District Judge Theresa Springmann then found that the ALJ's reliance on those opinions was improper, as they were provided "more than two years before the ALJ's decision and before the opinions from the treating psychiatrists were entered into the record." (R. 771); *Hizer v. Berryhill*, No. 4:16-CV-00092, 2018 WL 4059821, at *3 (N.D. Ind. Aug. 24, 2018). The ALJ afforded those same opinions great weight in the 2019 decision, again finding that it was consistent with the record. (R. 657).

The ALJ cannot provide the state agency psychologists the same weight for the same reasons the second time around under the law of the case doctrine without "pointing to evidence that furnishes compelling grounds for departure from Judge [Springmann's] ruling." *Briscoe v.*

*Barnhart*, 425 F.3d 345, 354 (7th Cir. 2005); *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998). The law of the case doctrine is based "on the salutary and sound public policy that litigation should come to an end." *White v. Murtha*, 337 F.2d 428, 431 (5th Cir. 1967). The law of the case doctrine holds that once an appellate court decides an issue, that decision is binding on further proceedings in the same case. *See Key v. Sullivan*, 925 F.3d 1056, 1060 (7th Cir. 1991); *Montana v. United States*, 440 U.S. 147, 153-54 (1979).

      Here, Judge Springmann found that the ALJ's analysis of the state agency psychologists was faulty, as their opinions were provided two years prior to the ALJ's decision. Moreover, the treating physician opinions were not given until after the state agency psychologists provided their review, and therefore the state agency psychologists were unable to review those opinions. The ALJ failed to provide any new information or reasons to give great weight to the state agency psychologists over the treating physicians. The ALJ discusses no new evidence to support the ALJ's decision to again provide the state agency opinions great weight. The Commissioner asserts that the ALJ properly provided the state agency psychologists great weight, stating that Dr. Lace's testimony supported the state agency opinions. [ECF 11 at 7]. However, the ALJ made no such correlation or conclusion in the decision. The ALJ provided separate discussions and analysis of Dr. Lace's testimony and the state agency psychologist's opinions. (R. 657). The ALJ never linked the two in the discussion, nor did he explain that the state agency psychiatrists were due great weight due to the testimony of Dr. Lace. The Commissioner's argument is improper *post hoc* rationalization. *See SEC v. Chenery Corp.,* 318 U.S. 80, 87 (1943). The Commissioner cannot use Dr. Lace's testimony to support the ALJ's analysis of the state agency psychologists when the ALJ has not done so himself. The only reasons the ALJ provides for giving the state agency psychologists great weight is that "it is consistent with the record and reasons set forth

8

above." (R. 657). Judge Springmann found this to be improper in her decision, and the ALJ erred in providing the same findings and analysis in the 2019 decision. This error requires remand for the same reasons described by Judge Springmann. *See Hizer v. Berryhill*, No. 4:16-CV-00092, 2018 WL 4059821, at *3 (N.D. Ind. Aug. 24, 2018).

Finally, Hizer asserts that the ALJ erred in analyzing the opinion of Nurse Practitioner Philipose. The ALJ provided Ms. Philipose's opinion little weight, noting that she only began treating Hizer in July 2019, and that her opinion is based solely on treatment for two months in 2019. (R. 656). The ALJ found that Ms. Philipose claims all limitations apply as far back as June 2011, but that she based that opinion on Hizer's partial hospitalization program in 2011. The ALJ dismissed her opinion, as Ms. Philipose was a nurse practitioner, not a medically acceptable source, who did not treat Hizer during the relevant time period. (R. 656). Moreover, the ALJ noted that Hizer never had a partial hospitalization in 2011, which the ALJ took as proof that Ms. Philipose was not familiar with Hizer's mental health records for the relevant time period, and instead relied on Hizer's subjective statements. *Id.*

Hizer asserts that the ALJ failed to properly analyze Ms. Philipose's opinion using the factors in SSR 06-03p. She asserts that Ms. Philipose was seeing her regularly. However, Hizer fails to acknowledge that although Ms. Philipose stated that she saw Hizer every 3-4 weeks and as needed, she still had only treated Hizer for two months. (R. 1932). She began treating Hizer on July 29, 2019, and at the time the opinion was written, the most recent exam was September 20, 2019. *Id.* The ALJ properly found that Ms. Philipose's treating relationship with Hizer was short lived at the time of the opinion. Hizer asserts that the ALJ should have considered the consistency of Ms. Philipose's opinion with the rest of the record. However, Hizer does not provide any evidence that Ms. Philipose's opinion was consistent with the evidence in the record. Instead, she

9

merely lists findings cited by Ms. Philipose. Hizer provides no evidence from the rest of the record that would corroborate Ms. Philipose's opinion on her limitations. Moreover, the ALJ properly discussed the most relevant factors in this case in giving Ms. Philipose's opinion little weight. The ALJ considered length of treating relationship and the date of the opinion. The ALJ properly gave the opinion little weight due to the fact that Ms. Philipose both treated and provided her opinion nearly five years after Hizer's date last insured. However, the ALJ did err in analyzing the state agency psychologist's opinions, and therefore remand is appropriate.

### 5. Other Issues

Hizer makes several other arguments regarding her RFC and subjective symptoms. Because the Court is remanding on the above issues, it need not discuss the rest of the arguments addressed in Hizer's brief. Addressing the above issues may alter the RFC determination. Hizer may address these issues on remand.

### CONCLUSION

For the foregoing reasons, the decision of the Commissioner is REMANDED for further proceedings consistent with this Opinion and Order. The Clerk is DIRECTED to enter judgment in favor of Plaintiff and against the Defendant.

SO ORDERED on May 6, 2021.

    s/ Holly A. Brady
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT